No.  26-11143

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT**

---

In re: Scott McDonald,

Petitioner.

---

On Petition for Writ of Mandamus to the United States District Court
for the Northern District of Alabama, Northeastern Division
Case No. 5:25-cv-02226

---

**PETITION FOR PANEL REHEARING
AND, IN THE ALTERNATIVE,
PETITION FOR REHEARING EN BANC**

---

Scott McDonald (pro se)
789 Neal Drive
Gurley, Alabama 35748
Telephone: 256-503-0675
Email: scottm2@hiwaay.net

## CERTIFICATE OF INTERESTED PERSONS

Petitioner Scott McDonald is a natural person proceeding pro se.

Interested persons (district court case caption):

**Brisendine, James Eric**, Esq., Counsel for Defendant Beth McDonald, SCRUGGS DODD & BRISENDINE, ATTYS, PA, 207 Alabama Avenue SW, Fort Payne, AL 36968-1109, 256-845-5932, eric@sdblaw.us

**Dumont, Brooke**, Esq., Defendant, Huntsville, Alabama

**McDonald, Beth**, Defendant, New Market, Alabama

**McDonald, Nathan**, (Non-party), New Market, Alabama

**McDonald, Scott**, Plaintiff/Petitioner (pro se)

**Stott, Joseph E**., Esq., Counsel for Defendant Brooke Dumont, STOTT & HARRINGTON, P.C., 2637 Valleydale Road, Suite 100, Birmingham, AL 35244, 205-573-0500, joe@stottharrington.com

**The Honorable Harold D. Mooty III,** United States District Judge (respondent judge), United States District Court, 660 Gallatin Street, SW, Huntsville, AL 35801

Petitioner certifies that this list is complete to the best of Petitioner's knowledge.

**Introduction**

Petitioner Scott McDonald respectfully petitions for panel rehearing and, in the alternative, rehearing en banc of the Court's July 2, 2026 order denying the petition for writ of mandamus, pursuant to Fed. R. App. P. 40(a)(2). This petition identifies points of law that the panel's order overlooked: whether a district court may authorize use of an allegedly unlawfully intercepted communication before adjudicating its legality, and whether that recording may be filed publicly before that adjudication occurs. Once filed, no later appeal can undo its exposure. The panel's order treated the underlying question as arising from "certain discretionary decisions of the district court related to the administration of [the] case." That characterization does not withstand scrutiny.

The petition did not challenge routine case management. It challenged legal rulings and orders that turned on interpretations of federal statutory law: 18 U.S.C. §§ 2515 and 2518(10)(a). Those issues implicate statutory interpretation, the limits of district-court discretion, and the public-access requirements governing judicial records.

This petition satisfies each of the traditional prerequisites for mandamus relief. See *Cheney v. United States District Court*, 542 U.S. 367, 380–81 (2004) (mandamus requires (1) a clear and indisputable right to the writ, (2) no other adequate means to attain relief, and (3) that the writ is appropriate under the

1

circumstances), addressed, respectively, in Sections II through IV below. The petition includes one or more questions of exceptional importance. [1]

## I. The Panel Misapprehended the Petition

The panel order states that Petitioner sought relief outside the Court's limited mandamus power because he was "asking this Court to act itself by vacating and 'correcting' the district court's orders and rulings, as opposed to ordering an inferior court to act." Respectfully, that misapprehends the petition's text.

The first sentence of the Introduction stated that Petitioner sought "a writ of mandamus under 28 U.S.C. § 1651(a) directing the United States District Court for the Northern District of Alabama to vacate and correct orders and rulings…." The first sentence of the Relief Sought section likewise stated that Petitioner sought "a writ of mandamus under 28 U.S.C. § 1651(a) directing the district court to…." Those opening statements were followed by specific requests that the writ direct the district court to vacate, strike, prohibit, or stay identified conduct below.

The petition therefore did not ask this Court to function as an ordinary interlocutory appellate tribunal. It asked this Court to direct the district court to correct rulings and orders carried out in excess of the district court's authority.

---

[1] Petitioner is self-represented and lacks access to Westlaw, Lexis, or similar research platforms. Citations were verified through publicly available sources, including PACER, the courts' own archives, and the U.S. Government Publishing Office. Where a precise pin cite could not be confirmed, Petitioner has cited the case or section as a whole.

## II. The Panel Misapprehended the Specific Relief Petitioner Sought

The panel order describes the petition as challenging "certain discretionary decisions of the district court related to the administration of his case." That description does not survive comparison with the record. The petition raises challenges and objections to non-discretionary acts.

### A. District Judges Lack Discretion to Reinterpret, Modify, or Rewrite Established Statutory Law

The central overriding theme in the petition concerns the proper interpretation and correct application of the suppression and exclusion provisions set out under the Federal Wiretap Act, Title III; specifically, 18 U.S.C. § 2518(10)(a)(i) and 18 U.S.C. § 2515.

The court's interpretation of section 2515 is at odds with recognized authorities and holdings of courts that have considered the intent and purpose of exclusion provisions under Title III. Simply stated, the district court had no discretionary authority to reinterpret the exclusion protections contained in the Federal Wiretap Act and instead interjected its own unsupported reasoning.

In denying the motion to strike, the district court reasoned that Congress could not have intended to prohibit use of a recording merely alleged to be unlawfully intercepted before that illegality was proven.

Courts cannot inject words into statutes where they do not appear. See *United States v. Garcon*, 54 F.4th 1274 (11th Cir. 2022). "Courts may not rewrite

3

the language of a statute in the guise of interpreting it in order to further what they deem to be a better policy than the one Congress wrote into the statute." *Norelus v. Denny's, Inc.*, 628 F.3d 1276 (11th Cir. 2010). The district court "stepped into Congress's shoes" and created a bar to exclusion that is simply not found in the statute.

One of the earliest cases to consider the exclusion provisions of Title III was *In re Grand Jury Proceedings, Pennsylvania*, 450 F.2d 199 (3d Cir. 1971). During grand jury proceedings, a witness whose communications had been intercepted without her knowledge or consent was ordered to testify about their contents. She refused, and was held in contempt. After extensive analysis of the intent of Congress in passing the Federal Wiretap Act, the U.S. Court of Appeals for the Third Circuit (en banc) reversed the district court and vacated the civil contempt order. The court ruled that grand jury witnesses have the right to refuse to answer questions if those questions are the fruit of illegal surveillance.

The Supreme Court ruling in *Gelbard v. United States*, 408 U.S. 41 (1972), is also on point. In *Gelbard*, persons whose conversations had been intercepted without their knowledge or consent were called before federal grand juries and asked questions derived from those intercepted communications. They refused to answer and defended their refusals on the ground that the questioning was based on

4

communications "allegedly intercepted by federal agents by means of illegal wiretapping and electronic surveillance." *Gelbard*, 408 U.S. at 42.

The significance of *Gelbard* is that the Supreme Court treated 18 U.S.C. § 2515 as precluding use, even though the interceptions had not been proven to be unlawful. The court proceeded on the premise that it was intercepted unlawfully. The district court's premise below is the reverse of the holding in *Gelbard*. It assumes that the communication remains usable until petitioner first proves illegality. *Gelbard* reflects the opposite understanding: where the communication is alleged to have been unlawfully intercepted, § 2515 is a live protection against compelled use and disclosure; it is not a right that springs into existence only after a final merits adjudication. Specifically, the *Gelbard* Court noted:

> The principal piece of legislative history relative to this question is S. Rep. No. 1097, 90th Cong., 2d Sess. (1968). … [the report] states that the section provides for suppression of evidence directly or indirectly obtained 'in violation of the chapter,' and that the provision 'should serve to guarantee that the standards of the new chapter will sharply curtail the unlawful interception of wire and oral communications.'

*Id.*

The Liddy proceedings arising from the Watergate prosecutions confirm the same principle. On January 5, 1973, the district court denied a motion to suppress on the rationale that disclosure was needed to prove the wiretap offenses, and held that § 2515 did not bar use of the allegedly illegal recording at trial. See *United States v. Liddy*, 354 F. Supp. 217, 220–21 (D.D.C. 1973). The D.C. Circuit

5

reversed within two weeks, before trial, and ordered the recordings excluded. *United States v. Liddy*, No. 1827-72 (D.C. Cir. Jan. 19, 1973). After trial, the D.C. Circuit confirmed that the district court had "ordered that the contents not be offered as evidence," notwithstanding the district court's initial view that disclosure was necessary to the prosecution's case. *United States v. Liddy*, 509 F.2d 428, 446 (D.C. Cir. 1974). The *Liddy* proceedings illustrate that a district court's pretrial decision to permit use of an intercepted recording before a legality has been establihed is precisely the kind of sequencing error that reviewing courts have corrected before trial — not a discretionary case-management call.

In *United States v. Giordano*, the Court also considered the meaning and application of § 2511, distinguishing between criminal and civil application:

> [I]t is evident that § 2511 does not impose criminal liability unless disclosure is "willful" and unless the information was known to have been obtained in violation of § 2511(1). *Clearly, the circumstances under which suppression of evidence would be required are not necessarily the same as those under which a criminal violation of Title III would be found.*

*United States v. Giordano*, 416 U.S. 505 (1974) (emphasis added). [2]

---

[2] In 1986, Congress amended § 2520 to add a *mens rea* qualifier — but attached it only to "used," leaving "intercepted" and "disclosed" without any mens rea requirement even in the current version. See 18 U.S.C. § 2520(a) (providing a civil action for a communication "intercepted, disclosed, or intentionally used in violation of this chapter"); Pub. L. No. 99-508, § 103, 100 Stat. 1848, 1853 (1986). Congress has therefore never required proof of intent for interception or disclosure to support civil liability under Title III — before or after the 1986 amendment.

This interpretation is consistent with the civil-remedy provision, 18 U.S.C.

§ 2520, which, at the time of the Giordano ruling, read as follows:

> Any person whose wire or oral communication is intercepted, disclosed, or used in violation of this chapter shall [] have a civil cause of action against any person who intercepts, discloses, or uses, or procures any other person to intercept, disclose, or use such communications… .

18 U.S.C. § 2520 (1970).

Notably, unlike § 2511's criminal prohibition, the version of § 2520 in effect

at the time of Giordano imposed no *mens rea* requirement at all on interception,

disclosure, or use in the civil context. The Supreme Court's own construction of

§ 2511 confirms that Congress calibrated these *mens rea* requirements deliberately

— a legislative choice the district court had no authority to disregard in construing

the coextensive suppression provisions of § 2515.

To conclude that an act, intended to protect privacy, enforceable by a private

right of action, requires the person who exercises that right to make their private

matters public, would be truly absurd. *See Garcon*, 54 F.4th at 1283–84 (absurdity

doctrine).

In practical effect, the district court rewrote the statute's exclusionary

purpose by allowing the disputed recording to be disclosed and used before the

legality of disclosure and use had been adjudicated. That is not the kind of ordinary

administrative judgment to which the panel's order relegated the petition.

7

### B. The District Court Failed to Satisfy This Circuit's Sealing Requirements

This Court requires district courts to adhere to *Romero v. Drummond Co.*, 480 F.3d 1234 (11th Cir. 2007), when sealing documents. Likewise, the district court's own Initial Order states: "Any motion to seal must satisfy the legal standard in *Romero v. Drummond Co., Inc.*" *Romero* requires district courts to "articulate the particular reasons for [their] decision" and give "specific reasons why the document is appropriate for sealing." *Id.* at 1246.

See also *Chicago Tribune Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304 (11th Cir. 2001), which requires a court to articulate the basis for sealing and to balance the right of access against the interests favoring confidentiality; *United States v. Valenti*, 987 F.2d 708 (11th Cir. 1993), which requires "on-the-record, specific findings" that sealing is narrowly tailored to preserve higher values; and *Newman v. Graddick*, 696 F.2d 796, 802–03 (11th Cir. 1983), which states that the eventual decision to restrict access must be "articulated in findings" that appellate courts can review, … ."

However—and importantly—the district court did not articulate specific findings and on-the-record reasons for sealing judicial material, nor did it balance the public's presumptive right of access against the interests favoring nondisclosure. Those failures are among the errors raised in the petition.

8

### C. Intent Is for the Jury to Decide — The Court Ruled on the Merits

In its order denying Petitioner's motion to strike the sealed exhibit, Petitioner raised 18 U.S.C. § 2515 as the basis of the motion, and cited *Gelbard* as supporting authority. The motion also raised lack of adherence to *Romero*.

In its denial of the motion, the court cited and analyzed cases discussing the meaning of "intent" under the Federal Wiretap Act. The court concluded that, because Plaintiff had not proven that the recording was created "intentionally," the act did not require the recording to be excluded during proceedings. This rationale is in direct contravention of the holdings in *In re Grand Jury Proceedings*, *Gelbard*, and *Liddy*.

Of equal importance, the district court had no occasion at this stage to decide, or partially decide, the ultimate merits question of intent in order to justify use of the disputed recording. This is a jury-trial case. Whether the recording was intentionally created is a merits issue for the jury, not a threshold judicial exception to 18 U.S.C. § 2515 to be made by the presiding judge.

The court's reasoning inverted that structure. It used the absence of a final merits determination as the reason to authorize current judicial use of the recording. That is precisely the problem: the court treated an unresolved jury issue as a license for immediate use, even though the legality of that use is itself the statutory question raised by the motion to suppress and exclude. Courts have no

9

discretion to bypass statutory and procedural commands in that manner. See

*Chambers v. NASCO, Inc.*, 501 U.S. 32, 66 (1991); *Bank of Nova Scotia v. United States*, 487 U.S. 250, 255 (1988); *Rivers v. Roadway Express, Inc.*, 511 U.S. 298, 312 (1994).

The statute prohibits unlawful recordings from being used in any trial or hearing. By necessary implication, for the recording to be approved for use, the court would necessarily have had to conclude that the recording was lawful for judicial use. That is a merits determination the court had no discretion to make.

## III. The Panel Misapplied the Law Governing Alternative Remedies

The panel order reasoned that Petitioner had adequate alternatives in the form of district-court motion practice, final-judgment review, and possible certification under 28 U.S.C. § 1292(b). Respectfully, that analysis does not fit.

### A. District-Court Correction Was Attempted and Rejected on the Precise Issue Central to the Petition

The panel noted that Petitioner could challenge the district court's rulings below. Petitioner attempted to do exactly that before filing the petition.

During the March 31, 2026 hearing, Petitioner objected both when the district court proposed to receive and seal the disputed recording, and again when the court proposed to listen to it in chambers. After the hearing, Petitioner filed a motion to strike the sealed exhibit (Exhibit 1). That motion invoked 18 U.S.C. § 2515, argued that sealed custody of the disputed recording violated the exclusion

requirements in that section, and sought an order that the recording not be used in the proceeding. The motion also cited *Gelbard*, specifically for the proposition that § 2515 serves to prevent courts from becoming vehicles for unlawful interceptions.

The district court's order denying that motion goes to the heart of this petition. In that order, the court reasoned that 18 U.S.C. § 2515 did not bar use of the recording because Petitioner had not yet proved intentional interception. In substance, the court authorized use of the disputed communication in order to defeat the claim that the communication could not lawfully be used. That is not a scheduling call. It is a legal interpretation of §§ 2515 and 2518(10)(a), and neither the district court nor defendants cited any authority supporting that sequence.

In denying the strike motion, the district court clarified and entrenched its legal premise: that the recording could be used because Petitioner had not yet proven intentional interception, and that the communication itself could be judicially considered before the legality of disclosure and use had been adjudicated. Thus, correction was attempted on the precise issue and rejected.

### B. Requiring Petitioner to Risk Contempt Is Not an Adequate Alternative Remedy

Nor is contempt an adequate substitute. A party may ordinarily refuse compliance, accept a contempt sanction, and obtain review on appeal from that sanction. But that route does not fit here: the recording has already been received, sealed, and preserved for prospective use. No future refusal to discuss it would

undo that ruling or halt the recording's path toward the public docket; a contempt appeal would test only the propriety of a future refusal, not the legality of the rulings already made below.

### C. Section 1292(b) Was Not a Meaningful Substitute

Section 1292(b) applies only when an order involves a controlling question of law, there is substantial ground for difference of opinion, and an immediate appeal may materially advance the ultimate termination of the litigation. 28 U.S.C. § 1292(b). That mechanism was not an applicable substitute here.

First, the district court's use-before-adjudication premise does not present the sort of unsettled legal issue that makes § 1292(b) a meaningful substitute. *Gelbard* did not require a prior final adjudication of illegality before treating § 2515 as a presently available protection against compelled use of allegedly intercepted communications. *Liddy* confirms that a district court's contrary sequencing should be corrected before trial. Together, those authorities undercut any claim that the premise adopted below presents a substantial ground for difference of opinion.

Second, by the time certification would even be considered, the very regime challenged by the petition was already in operation. The district court had already used the recording judicially, sealed and lodged it, denied the motion to strike it, and authorized future filing and derivative use. The petition did not merely

12

challenge a future possibility of harm. It challenged an existing use-and-sealing framework.

For these reasons, § 1292(b) was not an adequate substitute.

### D. Mandamus Remained the Proper Method

*La Buy v. Howes Leather Co.*, 352 U.S. 249 (1957), recognized the courts of appeals' supervisory mandamus power in exceptional circumstances and emphasized that the All Writs Act reaches "the exceptional case where there is clear abuse of discretion or usurpation of judicial power." *Id.* at 257. The Court also explained that where the subject concerns enforcement of rules "which, by law, it is the duty of this court to formulate and put in force," mandamus is proper when lower-court action is "so palpably improper as to place it beyond the scope of the rule invoked." *Id.* at 256 (quoting *Los Angeles Brush Mfg. Corp. v. James*, 272 U.S. 701, 706–07 (1927)).

*Will v. United States*, 389 U.S. 90 (1967), reinforces the same point. *Will* explains that mandamus may issue "to confine an inferior court to a lawful exercise of its prescribed jurisdiction" and to correct "a judicial usurpation of power." *Id.* at 95–96. In discussing the traditional office of the writ, *Will* cites the supervisory line of cases in which mandamus was used to correct "persistent disregard of the Rules of Civil Procedure." *Id.* The cases *Will* cites include *La Buy* and the earlier supervisory cases discussed there.

13

In the Eleventh Circuit, mandamus has also been recognized as appropriate in the context of discovery orders that compromise privilege or invasion of privacy rights because of "the importance of the privilege, the seriousness of the injury if discovery is obtained, and the difficulty of obtaining effective review once the privileged information has been made public." *In re Ford Motor Co.*, 345 F.3d 1315, 1316 (11th Cir. 2003) (quoting *In re Fink*, 876 F.2d 84 (11th Cir. 1989)).

See also *Mohawk Industries, Inc. v. Carpenter*, 558 U.S. 100 (2009), identifying mandamus as one of the recognized "safety valves" for extraordinary disclosure disputes.

*SEC v. Rajaratnam*, 622 F.3d 159 (2d Cir. 2010), is precisely on point. There, the Second Circuit rejected collateral-order review but granted mandamus because later appeal could not adequately remedy the distinct disclosure injury caused by exposing intercepted conversations before legality was resolved. The court explained:

> [S]uppressing illegally intercepted evidence, or finding the discovery order erroneous on appeal of a final judgment, would not remedy the harm done to the right against disclosure, … .

*Rajaratnam*, 622 F.3d at 168.

That principle applies with even greater force where, as here, the district court created a regime of judicial use and derivative deployment that cannot be remedied after disclosure on the public record.

14

**IV. Rehearing En Banc Is Warranted in the Alternative**

Rehearing en banc is warranted where "the proceeding involves a question of exceptional importance." Fed. R. App. P. 35(a)(2). If the panel declines rehearing, this case meets that standard.

Under the panel's approach, a district court may authorize judicial use and an allegedly unlawful communication, and later review after final judgment — or the speculative possibility of § 1292(b) certification — is deemed sufficient to defeat mandamus. That approach reaches well beyond the facts of this case. It effectively authorizes district courts to create an atextual, judge-made exception to 18 U.S.C. § 2515's exclusionary command whenever a party has not first proven a illegality — presumably, before filing suit. Left undisturbed, that approach would govern the sealing and disclosure of intercepted communications in every Title III case arising in this Circuit. The question presented here is precisely the kind of recurring, circuit-wide statutory question that en banc review exists to resolve.

**Conclusion**

For these reasons, Petitioner respectfully requests that the Court grant panel rehearing, vacate the July 2, 2026 order denying the petition for writ of mandamus, and reconsider the petition in light of the points identified above. In the alternative, Petitioner respectfully requests rehearing en banc.

Respectfully submitted,

Date: _____                _____

Scott McDonald
Plaintiff, pro se
789 Neal Dr.
Gurley, AL 35748
(256) 503-0675
Scottm2@hiwaay.net

## CERTIFICATE OF SERVICE

I certify that on March 7, 2026, a true and correct copy of the foregoing PETITION FOR WRIT OF MANDAMUS has been sent by electronic means using the Court's CM/ECF electronic filing system for parties registered with CM/ECF and via US Mail, postage prepaid, for all other parties.

Date: _____                _____

Scott McDonald
Plaintiff, *pro se*
(256) 503-0675
scottm2@hiwaay.net

James Eric Brisendine, Esq.
Counsel for Defendant Beth McDonald
SCRUGGS DODD & BRISENDINE, ATTYS, PA
207 Alabama Avenue SW, Fort Payne, AL 36968-1109
256-845-5932
eric@sdblaw.us

Joseph E. Stott, Esq.
Counsel for Defendant Brooke Dumont
STOTT & HARRINGTON, P.C.
2637 Valleydale Road, Suite 100
Birmingham, AL 35244
205-573-0500
joe@stottharrington.com

**CERTIFICATE OF COMPLIANCE**

1.  This petition complies with the type-volume limitation of Fed. R. App. P. 35(b)(2) and 40 because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this petition contains **3,528 words**, spanning **15 pages**.

2.  This petition complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using [Microsoft Word] in [**Times New Roman, 14-point**].